UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THE MUSLIMS OF AMERICA,
INC.,

                          **Plaintiff,**

      v.                                                   3:13-CV-0169

MARTIN J. MAWYER, *et al.*,

                          **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States District Judge

**DECISION & ORDER**

**I.    INTRODUCTION**

      Plaintiff The Muslims of America, Inc. commenced this diversity action asserting claims sounding in defamation. See Compl., dkt. # 1. Defendants move to dismiss the action pursuant to Rule 12, or, in the alternative, Rule 56, dkt. # 42; and for Rule 11 sanctions. Dkt. # 43. Plaintiff opposes both motions, dkt. # 52, and Defendants have filed a reply to Plaintiff's opposition. Dkt. # 57.[1] Because Plaintiff treats the dismissal motion as one seeking summary judgment under Rule 56, the Court will treat it similarly. For the reasons that follow, Defendants' motion for summary judgment is granted and their motion for sanctions is denied.

**II.    SUMMARY JUDGMENT STANDARD**

      The Court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV.

---

[1] The Court has not considered the additional factual materials provided in the Reply because Plaintiff has not had an opportunity to respond thereto.

1

P. 56(a).  A dispute is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir.1997) (citations omitted).  Hearsay evidence that would not be admissible if testified to at trial is not competent material on a Rule 56 motion. Sarno v. Douglas Elliman- Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).

In determining whether to grant summary judgment, the Court must view all admissible facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual

argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with citations to the record, each material fact about which the moving party contends there exists no genuine issue. N.D.N.Y.L.R. 7.1(a)(3). Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Id. (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions

and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(*per curiam*)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original); McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

## III.     BACKGROUND[2]

Plaintiff, The Muslims of America, Inc, ("TMOA"), is a New York religious corporation incorporated on January 24, 2013.  This case concerns allegedly defamatory statements published in 2012.  The Complaint provides:

> This is an action against Martin J. Mawyer, Christian Action Network, and Patti A. Pierucci, defendants, for the malicious, repetitious, and continuous, pronouncements and publication of defamatory statements against Plaintiff.  The provocative and defamatory statements were included in the book: Twilight in America: the Untold Story of Islamist Terrorist Training Camps in America, authored by Martin J. Mawyer and Patti Pierucci, (October 2012), uttered by Mawyer on various media outlets including Fox News (October 2012) and posted on CAN's [Christian Action Network's] website www.Christianaction.org at various dates and times.

---

[2]Unless indicated otherwise, the facts set forth above are admitted by the opposing party, properly supported by the record, or deemed admitted for failing to provided proper support for a denial. See Local Rule 7.1(a)(3).

4

Compl. ¶ 1.

By agreement of the parties incorporated in Magistrate Judge Peebles' December 26, 2013 Order, dkt. # 34, Plaintiff's defamation claims are limited to the statements referenced in paragraphs 37, 39, 45, 47, 53, and 55 of the Complaint. These allegedly defamatory statements were directed to the Muslims of Americas, Inc. ("MOA"), a New York religious corporation founded in 1985.  See Compl. ¶ 6;[3] see also ¶¶ 37, 39, 45, 47, 53, and 55 (discussed below).

There is no dispute that Plaintiff's counsel filed an action to dissolve MOA on February 6, 2013.  It is also undisputed that the petition for dissolution contains an affidavit that recites, among other things, that "[t]he entire incorporation filing stemming from the [1985] amendment [to the articles of incorporation] was fraudulent as it identifies a fictitious board of trustees, signatures and dishonest notary attestation," and further recites that "cunning members" who were Wahhabists[4] "falsely presented themselves" and "created a Trojan horse by linking MOA's legal status with the negative history of IM," IM being Ikhwanul Muslimin.[5]  The Supreme Court of the State New York, Delaware County, signed an Order dissolving MOA on March 15, 2013.  The Dissolution Order was entered

---

[3]MOA consists of congregates located throughout North America "including in 12 rural communities located in Georgia, Michigan, New York, South Carolina, Virginia, Tennessee, Texas, Canada, and Trinidad." Compl. ¶ 14.  MOA also owns two parcels of land in New York, including 60 acres in Hancock, New York. Compl. ¶¶ 11-14.

[4]Defendants' Statement of Material Facts contains a footnote indicating: "Al Qaeda is Wahhabist." Plaintiff neither admits or denies the factual content of this footnote, but because Defendant provides no support for the contention is not deemed admitted.  The Court provides the instant footnote only for purposes of context.

[5]Defendants' Statement of Material Facts contains a footnote indicating that Ikhwanul Muslimin is another name for the Muslim Brotherhood.  Again, Plaintiff neither admits or denies the factual content of this footnote, but because Defendant provides no support for the contention is not deemed admitted.  The Court provides the instant footnote only for purposes of context.

5

March 20, 2013.

The allegations of defamatory statements in the Complaint concern the operation of MOA. Paragraph 37 quotes from Defendants Mawyer and Pierucci's book, <u>Twilight in America: the Untold Story of Islamic Terrorist Training Camps inside America</u> ("<u>Twilight</u>"), asserting that the following statement is defamatory:

> "Also maddening is the fact that Al Fuqra/MOA had been listed on the State Department's list of terrorist groups but was removed in the year 2000 after what appeared to be a period of inactivity." <u>Twilight</u> pg. 230.

Paragraph 39 also quotes from <u>Twilight</u>, asserting that the following statement is defamatory:

> "In the privacy of Muslim compounds across our land they are preparing our own citizens to wage a holy war - jihad - against America. As many state and federal authorities turn a blind eye, these Islamic extremists convert our own citizens, then teach them how to kill." <u>Twilight</u>: Back cover.

In Paragraph 45, Plaintiff asserts:

> Defendants stated as fact regarding York County, South Carolina, " ... [that] a 36 acre MOA compound is located, which hosted an array of notorious characters, in the jihadist world." <u>Twilight</u>, pg. 236.

In Paragraph 47, Plaintiff asserts that Defendant Mawyer made the following defamatory statement:

> "My book details the nearly 30-year history of MOA in America with its crimes, its acts of terrorism and its bold claim to establish Islamic guerilla warfare <u>training camps</u> across the country." Emphasis added. Article from Martin Mawyer published on CAN website.

Paragraph 53 contains the following allegation and quote from <u>Twilight</u> which Plaintiff contends is defamatory:

> Defendants attempt to draw a connection between the notorious so-called DC beltway sniper and the plaintiff. "But to really understand why [the DC shooter] recruited the young and impressionable Malvo and then went on his murderous

6

rampage, it's important to explore his earlier life and, most of all, why he walked into the welcoming arms of the Muslims of the Americas." See Twilight pg. 84.

In Paragraph 55, the Complaint quotes from an article written by Defendant Mawyer which allegedly contained the following defamatory statement:

"An American-based terror organization called 'Muslims of the Americas' (MOA) has petitioned the United Nations to have me Arrested." Article from Martin Mawyer published on CAN website: *Muslim Group Wants Me Arrested - Or Dead*.

## IV. DISCUSSION

### a. Dismissal Motion

Defendants argue that Plaintiff TMOA lacks standing to bring the instant action because it cannot satisfy the requirement that the allegedly defamatory statements concerned or injured TMOA, or that TMOA is legally capable of asserting claims on behalf of MOA. Plaintiff argues that the lawsuit concerns statements "about the Plaintiff's religious organization at a time when it identified itself as Muslims of the Americas Inc.," but that "the community" identified fraud associated with MOA so it took "steps to rectify it and has established itself with [a new] name and identity . . . now known as The Muslims of America Inc. ('TMOA')." Pl. Mem. L., pp. 3-4.

Article III, § 2, of the Constitution confines the judicial power of federal courts to deciding actual "cases" or "controversies." Sprint Communications Co., L. P. v. Apcc Services, Inc., 554 U.S. 269, 128 S. Ct. 2531, 2535, 171 L. Ed.2d 424 (2008). That case-or-controversy requirement is satisfied only where a plaintiff has standing. Id.; see, e.g., DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 126 S. Ct. 1854, 164 L. Ed.2d 589 (2006). In order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest");

(2) causation (i.e., a " 'fairly ... trace[able]'" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "'likely'" and not "merely 'speculative'" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992) (calling these the "irreducible constitutional minimum" requirements); see also Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 350 (2d Cir. 2008).[6]

In addition to Article III standing, the Supreme Court has developed what is referred to as the "prudential standing" requirements.

> Unlike "Article III standing, which enforces the Constitution's case-or-controversy requirement," prudential standing, the second facet of the Supreme Court's standing jurisprudence, embodies "judicially self-imposed limits on the exercise of federal jurisdiction." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S. Ct. 2301, 159 L. Ed.2d 98 (2004) (internal quotation marks and citation omitted). The Supreme Court has held that "prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Id. at 12, 124 S.Ct. 2301 (internal quotation marks omitted).

Selevan v. New York Thruway Authority, 584 F.3d 82, 91 (2d Cir. 2009).

A Plaintiff "bear[s] the burden of alleging facts that demonstrate [its] standing." LaFleur v. Whitman, 300 F.3d 256, 268 (2d Cir. 2002); see also Baur v. Veneman, 352

---

[6](To satisfy Article III's standing requirements, a party must demonstrate that "'(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.' ")(quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000)).

F.3d 625, 642 n. 15 (2d Cir. 2003).[7]

As indicated, Defendants argue that Plaintiff lacks standing because it was not injured by the allegedly defamatory statements made before Plaintiff existed, and because there is no evidence or legal support for the proposition that Plaintiff is legally entitled to prosecute tort claims on behalf of MOA. Plaintiff argues, in essence, that TMOA is one and the same as MOA so TMOA is entitled to prosecute this action. But Plaintiff offers no factual or legal support for this proposition, or for the more pertinent proposition that TMOA subsumed the assets and liabilities of MOA - the party against which the allegedly defamatory statements were made. As the record stands, TMOA and MOA are two distinct religious corporations with the former incorporated after the allegedly defamatory statements, and with no legal relationship between the two. Further, the reason given for the dissolution of MOA - namely, the fraudulent pretenses under which it operated, seems to be antithetical to the contention that TMOA was formed merely to implement a name change.

Plaintiff also argues that discovery is necessary to demonstrate the legal relatedness of the two corporations, but the argument is unavailing. Rule 56(d) requires a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgement]." Fed. R. Civ. P. 56(d). Plaintiff has not presented a proper affidavit or declaration on this motion, so, to the extent it makes a Rule 56(d) application, it fails. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir.1994) ("A reference to Rule 56(f) [now

---

[7] ("[A] plaintiff must demonstrate standing for each claim and form of relief sought.").

Rule 56(d)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit ... and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate...."). Further, assuming the two corporation are legally related, Plaintiff would be possessed of any document or record setting forth its responsibility relative to, or in place of, MOA. Thus, there would appear to be no need for additional discovery in order for Plaintiff to respond to the present motion.

In the end, Plaintiff has offered no factual or legal support for the proposition that TMOA is the legal successor to the interests of MOA. Without this legal or factual support, Plaintiff lacks standing to pursue this action in its own right or as the successor-in-interest for the allegedly defamed party. Accordingly, Defendants' motion to dismiss the action is granted.

### b. Sanctions Motion

Defendants also move for Rule 11 sanctions against Plaintiff for bringing the instant action. Under Rule 11, the Court may impose sanctions against an attorney or a party who files a pleading for an improper reason, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or when there is no legitimate legal basis to support the pleading. FED. R. CIV. P. 11(c). Rule 11(b) mandates, *inter alia*, that a party's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument" and that the parties' "factual contentions have evidentiary support." See Fed. R. Civ. Proc. 11(b)(2)-(3). Rule 11 places an "affirmative duty" upon attorneys to make "reasonable inquiry" into the facts and the law. Gutierrez v. Fox, 141 F.3d 425,

427 (2d Cir.1998) (internal quotation marks and citation omitted). "'The standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement." Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir. 2003) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)).

> "Although the imposition of sanctions is within the province of the district court, any such decision should be made with restraint and discretion." Pannonia Farms, Inc. v. USA Cable, 426 F.3d 650, 652 (2d Cir. 2005) (internal quotation marks and citation and alteration omitted). "When divining the point at which an argument turns from merely losing, to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading." Dorchester Fin. Secs. v. Banco BRJ, S.A., 2010 WL 2483983, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and citation and alterations omitted); see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 73 F.3d 1253, 1259 (2d Cir.1996) (noting that "Rule 11 sanctions must be imposed with caution").

Sedacca v. Mangano, 2014 WL 1392224, at *5 (E.D.N.Y., April 09, 2014).

Plaintiff's failure to support its contention that TMOA is the legal successor to the interests of MOA is not sanctionable conduct. While, as discussed above, Plaintiff has not presented legal or factual support for such a proposition, it does not appear beyond the possible that, under the circumstances alleged by Plaintiff in its memorandum of law, TMOA could *potentially* prosecute tort claims on behalf of MOA.[8] Accordingly, Defendant's motion for sanctions is denied.

## V.   CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [dkt. # 42] is **granted** and the action is **dismissed**. Defendants' motion for sanctions [dkt. # 43] is **denied**.

---

[8]The Court offers no opinion as to whether or how this outcome could be accomplished.

11

**IT IS SO ORDERED.**

Dated: April 23, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge